<u>**NOT RECOMMENDED FOR PUBLICATION**</u>

No. 25-1576

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

> **FILED**
> May 8, 2026
> KELLY L. STEPHENS, Clerk

CORNELL EUGENE BROWN, JR.,                )
                                                                           )
    Plaintiff-Appellant,                             )
                                                                           )    ON APPEAL FROM THE UNITED
v.                                                                       )    STATES DISTRICT COURT FOR
                                                                           )    THE EASTERN DISTRICT OF
MICHIGAN DEPARTMENT OF               )    MICHIGAN
CORRECTIONS, et al.,                               )
                                                                           )
    Defendants-Appellees.                          )

O R D E R

Before:  SILER, STRANCH, and MATHIS, Circuit Judges.

Cornell Eugene Brown, a Michigan prisoner, appeals the district court's judgment dismissing his complaint filed under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA).  Brown has waived oral argument, and this panel unanimously agrees that oral argument is not needed.  *See* Fed. R. App. P. 34(a).  As discussed below, we affirm in part, vacate in part, and remand for further proceedings.

The events giving rise to this action occurred at the Charles Egeler Reception and Guidance Center in 2023.  Brown alleged that, on August 3, Correctional Officer Glenn entered Brown's housing unit, claiming that he smelled smoke.  Glenn allegedly ordered Brown to "cuff up."  As Glenn was getting out his handcuffs, Brown allegedly told him that he has a "medical detail" for a "medical device (arm/shoulder sling)" in view of his "disability"—a shoulder injury that he suffered while exercising—and that he needed to be handcuffed in the front of his body because handcuffing him from behind "would injure [him] and be very painful."  According to Brown, Glenn "purposefully ignored" him and handcuffed him from behind, "redislocat[ing] [his]

shoulder." Brown alleged that he was taken to a hospital, where "the doctors found [that he] had a clear injury" and a "decrease of active range of motion, which was [a] substantially wors[e] range from the previous/original injury."

Brown filed a grievance against Glenn based on the foregoing incident. The grievance was denied at the first step of the grievance process. According to Brown, on August 28, when he went to submit his grievance appeal form, Glenn—upon learning of the grievance—tried to stop Brown from turning in the grievance, handcuffed Brown from behind, which "reinjured [his] shoulder," and told other correctional officers to send Brown "to the 'hole'"—i.e., "segregation." Brown alleged that "Glenn's actions cause[d] the reinjuries of dislocating [his] shoulder" and "excruciating pain" for which he continues to seek treatment, including physical therapy and potentially surgery.

Brown filed a pro se complaint suing Glenn, the Michigan Department of Corrections (MDOC), the State of Michigan, and Unknown Correctional Officers. On his standardized complaint form, he checked the box indicating that he sued Glenn and the Unknown Correctional Officers in their official capacities. Seeking monetary relief, Brown's complaint alleged claims for retaliation and for violations of his Fifth, Eighth, and Fourteenth Amendment rights, the "Prisoners Rights Act," and the ADA.

Pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the district court screened Brown's complaint and dismissed it without prejudice based on the defendants' immunity and for failure to state a claim.

Brown now appeals through counsel, challenging the dismissal of his retaliation and ADA claims and arguing that he should have been granted leave to amend his complaint to cure the deficiencies regarding Glenn's immunity. Brown has forfeited any challenge to the dismissal of his other claims by failing to raise these issues in his appellate brief. *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019).

Dismissal of Claims

*Standard of Review*

We review de novo a district court's sua sponte dismissal under 28 U.S.C. §§ 1915A and 1915(e)(2)(B). *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). Under these statutes, district courts must screen and dismiss complaints that are frivolous or malicious or fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B); *see also Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill*, 630 F.3d at 471 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

*All Claims Against the State of Michigan and MDOC*

The district court properly dismissed Brown's claims against the State of Michigan and MDOC. The Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989). Michigan has not consented to civil suits in federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Thus, the Eleventh Amendment bars Brown's claims against the State of Michigan and MDOC. *See Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

*All Claims Against Unknown Correctional Officers*

Fatal to Brown's claims against the Unknown Correctional Officers is his failure to allege any unconstitutional behavior on the part of these defendants. A critical aspect of § 1983 is that, to prevail, a plaintiff must demonstrate "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. To establish liability, an individual must show "that the violation was committed *personally* by the defendant." *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014); *see also Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). As the district court aptly explained, "Brown failed to plead

any facts regarding what the unknown corrections officers personally did or did not do to violate his rights." Thus, his claims against the Unknown Correctional Officers were subject to dismissal.

*ADA Claim Against Glenn*

Brown challenges the district court's dismissal of his ADA claim against Glenn, which he asserts falls under Title II. As noted above, Brown's complaint indicated that he sued Glenn in his official capacity.[1] Thus, we must initially assess whether Glenn is entitled to sovereign immunity. To do so, we apply the three-part sovereign-immunity test set forth in *United States v. Georgia*, 546 U.S. 151 (2006). *Y.A. ex rel. Alzandani v. Hamtramck Pub. Schs.*, 137 F.4th 862, 869 (6th Cir. 2025). First, we ask whether Glenn violated Title II and, if so, how. *Id.* Second, we ask whether that conduct also violated the Fourteenth Amendment. *Id.* If it did, then sovereign immunity does not apply. *Id.* If it did not (i.e., if the conduct violated Title II but *not* the Fourteenth Amendment), then "we ask whether Congress's attempt to abrogate sovereign immunity as to that 'class of conduct' is congruent and proportional to the task." *Id.* (quoting *Georgia*, 546 U.S. at 159).

We begin with the first part of the *Georgia* test. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (providing that this provision applies to the "services," "programs," and "activities" of state prisons). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Accordingly, to establish a prima facie case under Title II, a plaintiff must allege facts showing that he "(1) is disabled under the statutes, (2) is 'otherwise qualified' for participation in

---

[1] As discussed below, Brown claims that he "mistakenly" sued Glenn in his official capacity and meant to sue him only in his individual capacity. Nonetheless, we analyze his ADA claim as pleaded in his complaint.

[a government] program, and (3) 'is being excluded from participation in, denied the benefits of, or subjected to discrimination' [under the program] because of his disability or handicap." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016) (quoting *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013)). A plaintiff may satisfy the third Title II element through a theory of either intentional discrimination or failure to reasonably accommodate. *Knox County v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023), *overruled on other grounds by A.J.T. ex rel. A.T. v. Osseo Area Schs.*, 605 U.S. 335 (2025). An intentional-discrimination claim lies where the plaintiff alleges facts showing that "the defendant treated someone less favorably on account of his disability." *Id.* A failure-to-accommodate claim lies where the plaintiff alleges facts showing that "the defendant reasonably could have accommodated his disability but refused to do so, and that this failure to accommodate impeded his ability to participate in, or benefit from, the subject program." *Id.* (citation modified); *see* 28 C.F.R. § 35.130(b)(7).

Here, we assume without deciding that Brown sufficiently alleged that he—by virtue of his lingering shoulder injury—suffers from a "disability" within the meaning of the ADA, which is defined, "in favor of broad coverage," as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A), (2)(A), (4)(A); *see also* 29 C.F.R. § 1630.2(g)-(j); *Darby v. Childvine, Inc.*, 964 F.3d 440, 445 (6th Cir. 2020) (expounding on what is necessary to qualify as a disability).

But Brown failed to adequately allege the second element of a Title II claim. Nowhere in Brown's complaint did he allege facts suggesting that he was "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity" or that he was the subject of discrimination. 42 U.S.C. § 12132. True, the plain meaning of the phrase "services, programs, or activities" "encompasses virtually everything that a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998). But Brown failed to identify the denial of a particular benefit from a service, program, or activity that the MDOC was to "in fact provide." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 601 n.14 (1999). He merely complained about Glenn handcuffing him from behind on two occasions, which allegedly exacerbated his shoulder

injury and required various forms of medical care. These allegations do not allow us to infer that Glenn deprived Brown of the benefit of any service, program, or activity.

Undeterred, on appeal, Brown asserts that he "lacked meaningful access to a public entity's services when Glenn twice forced him to move across the prison while wearing handcuffs that injured him." He identifies "mobility" as the "service" that he was denied. *See Georgia*, 546 U.S. at 157 (stating that an ADA claim may be based on the "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs"). But "allegations may not be made for the first time on appeal." *ATC Distrib. Grp. v. Whatever It Takes Transmissions & Parts, Inc*., 402 F.3d 700, 713 n.8 (6th Cir. 2005). And, in any event, Brown still failed to allege that he was denied "meaningful access" to mobility throughout the prison "because of" his alleged disability. *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907, 910 (6th Cir. 2004).

In short, Brown's allegations fail to satisfy the first requirement of the *Georgia* test—setting forth a plausible Title II claim. "A claimant's failure to identify conduct that violates Title II . . . is dispositive of sovereign immunity." *Y.A.*, 137 F.4th at 869 (citation modified). Brown's Title II ADA claim therefore was subject to dismissal on immunity grounds.

*First Amendment Retaliation Claim Against Glenn*

Brown argues that he stated a claim for retaliation under the First Amendment. To do so, "a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) that the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). We conclude that Brown has sufficiently pleaded each element of a retaliation claim.

First, Brown alleged sufficient facts showing that he engaged in protected conduct by filing a grievance against Glenn—so long as the grievance was not frivolous. *See Maben v. Thelen*, 887 F.3d 252, 264-65 (6th Cir. 2018). And at this stage in the proceedings, we cannot say that the

grievance was frivolous. *See Dykes v. Marshall*, No. 18-2039, 2019 U.S. App. LEXIS 30498, at *11 (6th Cir. Oct. 10, 2019) (order) (stating that general allegations of "discriminatory" treatment and "harassment" in a grievance were "enough to survive the dismissal stage," even if the complaint "does not provide enough information to determine whether the grievance was frivolous"). Brown alleged that he wrote the grievance against Glenn after Glenn purportedly disregarded his "medical detail sheet" and "redislocated [his] shoulder" while handcuffing him from behind. True, the grievance was ultimately denied at all steps of MDOC's grievance process. But that does not mean that Brown's grievance was frivolous. *See Maben*, 887 F.3d at 265 (explaining that a grievance is non-frivolous if it raises a "legitimate" complaint that is not "*de minimis*"); *Brown v. Bott*, No. 21-2834, 2022 WL 3449219, at *3 (6th Cir. June 22, 2022) (order) ("A determination that [a prisoner's] grievances lacked merit . . . would not necessarily render them frivolous.").

The prison's responses to Brown's grievance confirm that Glenn had in fact initially handcuffed Brown (who was not wearing his sling at the time) from behind. Although the prison concluded that Brown was able to slide the handcuffs to the front of his body and did not suffer a (re-)dislocated shoulder, Brown maintains—and his medical records appear to show—that he indeed had a prior "shoulder dislocation" and that it may have dislocated again during the handcuffing incident. Given Brown's allegations—which we must accept as true, *Iqbal*, 556 U.S. at 678—and the medical records attached to his complaint, we conclude that Brown has adequately pleaded the first element of a retaliation claim.

Second, by allegedly placing Brown in solitary confinement and reinjuring Brown's shoulder by virtue of his handcuffing mechanism, Glenn took adverse actions against Brown that would deter a person of ordinary firmness from continuing to file grievances. *See Hill*, 630 F.3d at 474.

Finally, Brown alleged sufficient facts to show that Glenn's actions were "motivated at least in part by [his] protected conduct." *Thaddeus-X*, 175 F.3d at 394. He alleged that Glenn "litteally [sic] arrested [him] for and during [his] attempt to turn in the grievance form after [they]

discussed the fact that it was the grievance on him" and that Glenn handcuffed him from behind, "re-injur[ing] [his] shoulder and further had other officers send him to the 'hole' segregation for a 'cool down' period." In other words, Brown alleged that the protected conduct immediately preceded the alleged adverse actions. "[T]emporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (citation modified). We have held that a First Amendment retaliation claim should survive the dismissal stage, even when the only indication of a causal connection is temporal proximity, provided that temporal proximity is particularly close in time. *See, e.g.*, *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 632 (6th Cir. 2013; *Handy-Clay v. City of Memphis*, 695 F.3d 531, 546 (6th Cir. 2012). Brown has sufficiently pleaded a prima facie case of retaliation. We therefore vacate the district court's dismissal of this claim and remand for further proceedings on in the claim.

Dismissal Without Leave to Amend

Finally, Brown argues that the district court erred in dismissing his claims without leave to amend when he "mistakenly checked the official capacity box on his complaint form."

We generally review a district court's failure to grant leave to amend for an abuse of discretion. *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022). However, "the case law in this Circuit manifests 'liberality in allowing amendments to a complaint.'" *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)). And "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act]." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). But it is not required to do so. *See id.*

This is a case where leave to amend ought to be granted. Brown claims that "[t]he 'course of proceedings' here demonstrates that [he] sought to sue Glenn in his individual capacity alone" and that, when filing his pro se complaint, he "guessed wrong by checking the official capacity box" under Glenn's name. "Pro-se plaintiffs should be afforded the opportunity to amend prior to sua sponte dismissal, especially when . . . the plaintiff's claims are not patently frivolous."

*Coleman v. Kent*, No. 24-1737, 2025 WL 1768666, at *3 (6th Cir. June 26, 2025) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013)); *see, e.g.*, *Jackson v. Ohio*, No. 25-3270, 2025 WL 3730297, at *2 (6th Cir. Dec. 23, 2025) (order).  Although Brown is now proceeding through his attorney, he did not have the benefit of counsel in the district court.  And as set forth above, his First Amendment retaliation claim against Glenn in Glenn's individual capacity is far from being "patently frivolous."  Brown therefore should be permitted to amend his complaint and pursue his retaliation claim against Glenn in the proper capacity.

Accordingly, we **AFFIRM** the district court's judgment in part, **VACATE** it in part, and **REMAND** for further proceedings, including granting Brown leave to amend his complaint.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk